UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KINO CHRISTIAN, #721306,

        Petitioner,

                              Case No. 13-CV-11491

v.

                              HON. MARK A. GOLDSMITH

BONITA HOFFNER,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), DENYING PETITIONER'S MOTIONS FOR APPOINTMENT OF COUNSEL (Dkt. 18) AND EVIDENTIARY HEARING (Dkt. 19) AS MOOT, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

### I. INTRODUCTION

Petitioner Kino Christian, confined at the Gus Harrison Correctional Facility in Adrian, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1), in which he challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); assault with intent to commit murder, Mich. Comp. Laws § 750.83; carrying a concealed weapon, Mich. Comp. Laws § 750.227; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b; and being a second felony habitual offender, Mich. Comp. Laws § 769.10.  For the reasons stated below, the Court denies the petition for writ of habeas corpus.[1]

### II. BACKGROUND

_____

[1] The Court also denies Petitioner's motions for the appointment of counsel (Dkt. 18) and for an evidentiary hearing (Dkt. 19) as moot.

1

Petitioner was convicted following a jury trial in the Genesee County Circuit Court, in which he was tried jointly with his three co-defendants, Cquan Michael Hinton, Joshun Edwards, and Dartanion Edwards.   The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review, pursuant to 28 U.S.C. § 2254(e)(1).  See Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> Evidence was presented at trial that defendants Christian and Hinton approached 14–year–old Robert Person on October 9, 2007, while Person was walking with Jarylle Murphy in the vicinity of the Regency apartment complex in Flint.  Christian and Hinton accused Person of being a "snitch" and threatened to "get" him for snitching.  Person was still with Murphy later in the day when Murphy saw all four defendants behind them.  Murphy explained that he looked back because he is self-conscious about people being behind him.  Murphy spoke to Person and then looked back at the group a second time.  He saw the defendants pull out guns. Murphy ran away and heard gunshots as he was running.  Person died from multiple gunshot wounds.  A 7.62 by 39 millimeter fired bullet was recovered from Person's body during an autopsy.

> The police later recovered a .38 caliber gun that was linked to shell casings that were found at the scene of the shooting.  That gun belonged to William Harris's girlfriend, but the prosecution presented evidence that defendant Christian hid the gun behind a gas station following a different shooting incident on October 13, 2007, during which Perry Manuel was shot while operating a vehicle in which defendant Christian was a passenger.  On October 16, 2007, Murphy viewed a photographic lineup and identified defendant Hinton as one of the persons in the group who shot Person.  In November 2007, Murphy identified the other three defendants in photographic lineups.

> Robert Moore, who was lodged in jail with defendants Christian and Joshun after they were arrested, testified at trial that defendants Christian and Joshun both told him that they had killed Person and that both sought his help in killing Murphy. Another prosecution witness, Ashlie Dye, who was familiar with defendant Christian and was in the area where Person was shot, testified that she saw defendant Christian shooting at Person.

2

Defense proofs indicated that three of the defendants ended up at the Terrace apartments, which is located south of the Regency apartment complex, on the night of the shooting. Defendant Dartanion presented evidence that he was with two friends when the shooting occurred, and that they eventually drove to the Terrace apartments, where Dartanion's brother Joshun told them about a boy being killed in front of the Regency apartment complex. Defendant Joshun presented evidence that he was in the parking lot at the Terrace apartments when the shooting occurred, and that he learned about the shooting from Mickey Jones, who was at the Terrace apartments. Defendant Joshun also stated that he spoke with defendant Hinton while Joshun was in the parking lot. Defendant Christian presented evidence that he was selling drugs on the night of the shooting. He testified that Manuel, Harris, and a person known as "Pooh Bear" were present, but that these individuals left with guns after receiving a telephone call. Various witnesses also testified regarding Harris and Manuel making statements about shooting Person. Jesse Mays testified that he killed Manuel, but it was determined to be a justifiable homicide. Mays testified that Manual told him approximately three weeks before he died that he had shot Person and that all four defendants were innocent.

People v. Christian, No. 291578, 2011 WL 4424347, at *2-3 (Mich. Ct. App. Sept. 22, 2011).

After his conviction, Petitioner filed a motion for a new trial (Dkt. 13-3), which was denied. People v. Christian, No. 08-22018-FC (Genesee Cnty. Cir. Ct. Aug. 16, 2010), recons. denied No. 08-22018-FC (Genesee Cnty. Cir. Ct. Sept. 7, 2010) (Dkts. 13-5, 13-6). Petitioner's conviction was affirmed on appeal. People v. Christian, No. 291578, 2011 WL 4424347, at *21 (Mich. Ct. App. Sept. 22, 2011), recons. denied No. 291578 (Mich. Ct. App. Nov. 21, 2011) (Dkt. 12-6), leave denied 819 N.W.2d 874 (Mich. 2012).

Petitioner seeks a writ of habeas corpus on the following six grounds:

    i.    "That the repeated instances of exclusion of the public during Petitioner's trial[,] including during voir dire, violated his constitutional right to a public trial."

    ii.    "That Petitioner was deprive [sic] of his Sixth Amendment right to be present at critical stages of the trial when he was excluded from the proceedings during the courts [sic] interview with juror 11, and the courts [sic] interview with the other eleven juror's [sic]."

    iii.    "That Petitioner suffered sever [sic] prejudice and was denied his guaranteed and constitutionally protected right to due process when the trial court abused it's [sic] discretion by erroneously instructing the jury on flight, where no evidence produced at trial supported giving such and [sic] instruction."

    iv.    "That Petitioner was deprived of his constitutional right to present a defense which violated the Sixth and Fourteenth Amendment of the U.S. Constitution, when the trial court denied him the opportunity to utilize the recording of the wire worn by the prosecution's witness Moore during the presentation of the defense."

    v.    "That the determination by the Michigan Court of Appeals that the prosecutor did not commit misconduct by its [sic] repeated introduction of improper and highly prejudicial impeachment evidence on central issues of the case after two of its key witnesses, Marcus Turner, and Tobias Gatewood denied knowledge of the relevant events and provided no other substantive testimony for which impeachment evidence was proper, was contrary to clearly established law as determined by the U.S.S.C."

    vi.    "That defense counsel was constitutionally ineffective when he (A) failed to object to the repeated closure's [sic] of the courtroom to the public[,] (B) failed to object to Mr. Christian's repeated removal from the courtroom during critical stages of the proceedings[,] and (C) failed to object to the prosecution's improper use of impeachment ecidence [sic]."

See Pet. at 2-3.

## III.  STANDARD OF REVIEW

4

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."  Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted).  A

5

"state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011) (quotation marks).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> (citation omitted).  Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. <u>Id.</u>  Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA.  <u>See</u> <u>Wetzel v. Lambert</u>, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington,</u> 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. <u>Id.</u>  Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." <u>Id.</u> (quotation marks omitted).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." <u>Woodford v. Viscotti</u>, 537 U.S. 19, 24 (2002).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection

6

of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

## III.  ANALYSIS

The Court first addresses and rejects Petitioner's substantive claims, and then addresses whether to issue a certificate of appealability, as well as whether to allow Petitioner leave to proceed in forma pauperis.

### A.  Petitioner's Substantive Claims

#### 1.   Claims 1 and 6:  The Public Trial Claim and the Related Ineffective Assistance of Counsel Claim

Petitioner claims that his right to a public trial was violated by the exclusion of the public from the courtroom during jury voir dire.   Petitioner further claims that his right to a public trial also was violated when the trial court closed the courtroom to the public twice after the jury began its deliberations, first to interview a single juror who had indicated that she feared for her safety, and then to interview the remaining jurors concerning whether this juror's expressions of fear had tainted their ability to be fair and impartial.

Respondent contends that Petitioner's public-trial claim is waived because Petitioner failed to object to the closures of the courtroom.  Resp't Answer at 45-48 (Dkt. 7).[2]

---

[2] Respondent also argues that it is not clear that the courtroom was even closed for the voir dire. Petitioner attached six affidavits to his petition in support of  his claim that the courtroom was closed to the public during jury selection.  Resp't Answer at 44, 57-59.  The Court need not resolve this factual dispute.  Assuming that the courtroom was closed for voir dire, Petitioner waived this claim by failing to object, as discussed below.  Moreover, there is no allegation from Petitioner that he and his attorney were unaware of the closure of the courtroom during voir dire. Petitioner, in fact, as part of his sixth claim, alleges that trial counsel was ineffective for failing to object to the closure of the courtroom during jury selection, thus suggesting that trial counsel was aware that the courtroom was closed during jury selection.  Petitioner's appellate counsel, in

"The central aim of a criminal proceeding must be to try the accused fairly." Waller v. Georgia, 467 U.S. 39, 46 (1984). The Sixth Amendment public-trial guarantee was created to further that aim. Id. A public trial not only helps to ensure that both the "judge and prosecutor carry out their duties responsibly," it also "encourages witnesses to come forward[,] and discourages perjury." Id. The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless-error analysis. Id. at 49-50, n. 9; see also Carson v. Fischer, 421 F.3d 83, 95 (2d Cir. 2005) (noting that the Supreme Court, in Arizona v. Fulminate, 499 U.S. 279, 310 (1991), "listed deprivation of the right to a public trial as a 'structural' error to which harmless error analysis does not apply"). And in Presley v. Georgia, the Supreme Court held that a criminal defendant's Sixth Amendment right to a public trial was violated when the trial court excluded the public from the voir dire of prospective jurors, and when the court failed to consider reasonable alternatives to closure. 558 U.S. 209, 216 (2010).

Although the right to a public trial is a fundamental right, it can be waived if a habeas petitioner either acquiesces in the closure of the courtroom or fails to object. Peretz v. United States, 501 U.S. 923, 936–937 (1991) (noting that, among the most basic rights of criminal defendants that are subject to waiver, failure to object to the closing of a courtroom constitutes "waiver of right to public trial"). The Sixth Circuit is in agreement. See Johnson v. Sherry, 586 F.3d 439, 444 (6th Cir. 2009), cert. denied 131 S. Ct. 87 (2010) (citing Freytag v. Comm'r, 501 U.S. 868, 896 (1991) ("The Sixth Amendment right to a trial that is 'public,' provides benefits to

---

her motion to remand for an evidentiary hearing, which she had filed before the Michigan Court of Appeals, indicated that trial counsel, Petitioner, and Petitioner's family all informed her that they were aware that the court had been closed during voir dire. See Motion to Remand (Dkt. 12-6). Thus, even assuming that the courtroom was closed during voir dire, Petitioner is not entitled to habeas relief because of his failure to object to the closure of the court.

the entire society more important than many structural guarantees; but if the litigant does not assert it in a timely fashion, he is foreclosed." (brackets omitted))).   Other circuits have reached the same conclusion.  See United States v. Reagan, 725 F.3d 471, 488-489 (5th Cir. 2013), cert. denied 134 S. Ct. 1514 (2014) (defendants waived the claim that their right to a public trial was violated by the closing of the courtroom during voir dire; hence, the claim was unreviewable on appeal); United States v. Christi, 682 F.3d 138, 142-143 (1st Cir. 2012), cert. denied 133 S. Ct. 549 (2012) (by counsel's failure to object, defendant waived any claim of error in the court limiting public access to the courtroom during most of jury instructions); United States v. Rivera, 682 F.3d 1223, 1232 (9th Cir. 2012) (defendant may forfeit the right to a public trial by either "affirmatively waiving it or by failing to assert it in a timely fashion").  But see Walton v. Briley, 361 F.3d 431, 434 (7th Cir. 2004) (holding that habeas petitioner had not waived the right to a public trial by failing to object at trial, because a right to a public trial is a fundamental trial right which "may be relinquished only upon a showing that the defendant knowingly and voluntarily waived such a right").

In other words, the fact that the denial of the right to a public trial is a structural error does not mean that the claim cannot be waived by Petitioner's failure to object.  Although structural errors are per se reversible and not subject to harmless error review, such errors are nevertheless subject to the general rules of waiver, forfeiture, and default.  See Johnson v. United States, 520 U.S. 461, 466 (1997) (waived or forfeited structural error subject to plain error review under Fed. R. Crim. P. 52(b)); see also United States v. Suescun, 237 F.3d 1284, 1288 n.12 (11th Cir. 2001) ("Structural defects do not absolve a defendant's waiver of a defense or objection.").

9

The fact that Petitioner did not expressly agree on the record to the exclusion of the public from the jury selection or from the questioning of the various jurors, likewise, does not alter this analysis.  Although certain fundamental rights of a criminal defendant, such as the right to counsel or to decide whether to plead guilty, cannot be waived by counsel without the express, knowing, and voluntary consent of the defendant, see New York v. Hill, 528 U.S. 110, 114-115 (2000), for other rights, "waiver may be effected by action of counsel."  Id. at 114.  The Supreme Court has, "in the context of a broad array of constitutional and statutory provisions, articulated a general rule that presumes the availability of waiver," even when that waiver involves "the most basic rights of criminal defendants."  Id. (quotation marks and citation omitted).  Moreover, "the lawyer has—and must have—full authority to manage the conduct of the trial . . . .  Thus, decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence."  Id. at 115 (citations omitted).

Various federal circuit courts have held that a "defendant's attorney's waiver of the right to a public trial is effective on the defendant."  United States v. Hitt, 473 F.3d 146, 155 (5th Cir. 2006).  The Sixth Circuit, in Johnson v. Sherry, essentially acknowledged that the petitioner's right to a public trial had been waived by counsel's failure to object to the closure of the courtroom.  586 F.3d at 444, 446.  The Supreme Court has yet to hold that an attorney "cannot waive his client's right to a public trial."  Guyton v. Butler, 490 F. App'x 331, 333 (11th Cir. 2012).  Indeed, in denying a petitioner habeas relief, the Second Circuit has noted that "there is no clearly established binding precedent [from the Supreme Court] as to either whether personal waiver of the right to a public trial is constitutionally required, or as to whether waiver by

10

counsel requires consultation with a client." Daughtry v. Greiner, No. 01–2466, 2002 WL 31819589, at *1 (2d Cir. Dec. 16, 2002).

Thus, to the extent that Petitioner argues that his public-trial claim was not effectively waived because he did not personally waive this right, the Court concludes that habeas relief is precluded because of the lack of clearly established Supreme Court precedent regarding whether a defendant must personally waive his public-trial right or whether, if the right is to be waived by counsel, there must be consultation with the defendant. Id.

In the alternative, the Court finds that Petitioner's public-trial claim is procedurally defaulted because the Michigan Court of Appeals determined that Petitioner's public-trial claim had been forfeited due to Petitioner's failure to object to the closures of the courtroom at trial, and was, thus, subject to plain-error review. See Christian, 2011 WL 4424347, at *3.

When the state courts clearly and expressly rely on an "independent and adequate state procedural bar," federal habeas review also is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). Nonetheless, in an extraordinary case, where a constitutional error "has probably resulted in the conviction of one who is actually innocent," a federal court may consider the constitutional claims presented "even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 479-480 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the "allegations of

11

constitutional error with new reliable evidence . . . that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995).

The Michigan Court of Appeals concluded that Petitioner forfeited review of his public-trial claim because of his failure to object. Therefore, it reviewed the claim for plain error. <u>See Christian</u>, 2011 WL 4424347, at *3-4. The fact that the Michigan Court of Appeals engaged in plain-error review of Petitioner's public-trial claim does not constitute a waiver of the state procedural default. <u>Seymour v. Walker</u>, 224 F.3d 542, 557 (6th Cir. 2000) ("Controlling precedent . . . indicates that plain error review does not constitute a waiver of state procedural default rules."). Instead, the Court should view the state appellate court's review of Petitioner's claim for plain error as "enforcement of [the] procedural default." <u>Hinkle v. Randle,</u> 271 F.3d 239, 244 (6th Cir. 2001). Moreover, the fact that Petitioner's public-trial claim involves a structural error does not absolve him of the need to establish cause and actual prejudice to excuse the default. <u>See Ambrose v. Booker</u>, 684 F.3d 638, 650-651 (6th Cir. 2012) (holding that, given the "procedural default rule's roots in comity and federalism, a petitioner must show that he was actually prejudiced regardless of the nature of the underlying constitutional claim," and noting that concerns of comity and federalism "are in no way diminished if the federal claim raised before the federal habeas court is one of structural error"). Accordingly, the Court concludes that Petitioner's public-trial claim is procedurally defaulted.

Petitioner seeks to establish cause to excuse the default by arguing that trial counsel was ineffective for failing to object to the closure of the courtroom either during voir dire, or when the single juror or the remaining jurors were questioned after deliberations had begun. <u>See</u> Pet.

12

at 3, 78-84.  This also forms the basis for an independent claim of ineffective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  In so doing, the defendant must overcome a "strong presumption" that counsel's behavior lies within the "wide range of reasonable professional assistance."  Id. at 689.  In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Id. at 689.

Second, the defendant must show that such performance prejudiced his defense.  Id. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'"  Storey v. Vasbinder, 657 F.3d 372, 379 (6th Cir. 2011) (quoting Harrington, 131 S. Ct. at 792).  The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a "reasonable probability" that the result of the proceeding

13

would have been different but for counsel's allegedly deficient performance.  See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

In assessing whether a claim of ineffective assistance satisfies the "cause" requirement of Coleman, a less stringent standard of review is applied than when reviewing an independent, freestanding ineffective assistance of counsel claim pursuant to the deferential standard of review found in 28 U.S.C. § 2254(d).  The question for the federal habeas court is not whether the state-court's decision was unreasonable, but whether there was an independent Sixth Amendment violation under Strickland.  Stated differently, the level of scrutiny is the same as would be applied on direct review.  See Joseph v. Coyle, 469 F.3d 441, 459 (6th Cir. 2006).  "An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel." Hall v. Vasbinder, 563 F.3d 222, 236 (6th Cir.2009).  This is because the "latter must meet the higher AEDPA standard of review, while the former need not."  Id. at 237.  Nonetheless, the "prejudice analysis for the procedural default and the prejudice analysis for the ineffective assistance of counsel argument are sufficiently similar to treat as the same in this context.  Establishing Strickland prejudice likewise establishes prejudice for purposes of cause and prejudice.'"  Id. (brackets and quotation marks omitted).

Petitioner has failed to show that trial counsel was ineffective for failing to object to the closure of the courtroom for jury selection, either to excuse the default or as an independent claim for relief.  First, trial counsel's decision to agree to the closure of the courtroom for a non-public voir dire could well have been a reasonable trial strategy for the purpose of obtaining more honest or forthright responses from jurors, thus defeating Petitioner's claims.  See Horton

14

v. Allen, 370 F.3d 75, 82-83 (1st Cir. 2004) (holding that a "defendant may have an interest in protecting juror privacy in order to encourage honest answers to the voir dire questions," and that "counsel's decision to agree to a closed individual voir dire was an objectively reasonable strategy designed to elicit forthcoming responses from the jurors"); United States v. Koubriti, 252 F. Supp. 2d 424, 431 (E.D. Mich. 2003) ("The potential jurors will be more candid in their responses if they do not have to worry about what the public's opinion of those responses might be.").

In addition, at the time of Petitioner's trial in 2009, there was some question as to whether the Sixth Amendment public-trial right applied to the voir dire process. The Supreme Court had held that, at the time of Petitioner's trial, the First Amendment right of public access applied during voir dire, see Press-Enter. Co. v. Super. Ct., 464 U.S. 501, 510-511 (1984), but one justice concurring in that holding suggested that the Sixth Amendment public-trial right might have a more limited scope. See id. at 519 (Stevens, J., concurring) (noting that the "constitutional protection for the right of access that the Court upholds today is found in the First Amendment, rather than the public trial provision of the Sixth. If the defendant had advanced a claim that his Sixth Amendment right to a public trial was violated by the closure of the voir dire, it would be important to determine whether the selection of the jury was a part of the 'trial' within the meaning of that Amendment"). And the Supreme Court did not decide Presley v. Georgia until 2010 — after Petitioner's trial. Because Petitioner's counsel at the time of the trial in 2009 may well have reasonably questioned whether Petitioner had any constitutional right to an open courtroom during voir dire, counsel was not ineffective for failing to object to the closure of the courtroom during voir dire. See Woodson v. Hutchinson, 52 F. App'x 195, 198

15

(4th Cir. 2002) (holding that the Fourth Circuit had "not found any case in which the [Supreme] Court applied the Public Trial Clause [of the Sixth Amendment] to the jury selection process. Thus, [the petitioner's] attorneys could reasonably have questioned whether [the petitioner] had any constitutional right to an open courtroom during voir dire").

Petitioner also has failed to show that it was improper for the court to close the courtroom for the interview of Juror 11, or the remaining jurors.  Under Waller, to justify the closure of a courtroom, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."  Waller, 467 U.S. at 48.  The trial judge in this case, in rejecting Petitioner's motion for a new trial, found that the brief closures of the courtroom "were measured in minutes, in a nine day trial."  Christian, No. 08-22018-FC, at 15 (Dkt. 13-5).  The judge further noted that the brief closures involved: (i) questioning a "reluctant, fearful juror" who did not render a verdict, (ii) an inquiry with the remaining jurors about whether they had been contaminated by Juror 11's fears, and (iii) an agreed-upon jury instruction.  Id.  The judge further articulated reasons for closing the courtroom for the inquiry into Juror 11 and the remaining jurors:

> Clearly Juror #11 was frightened.  She said so.  She would not vote, at first either way and then would not vote for guilty.  She was afraid of retribution should she vote to convict.  Her fear included both Defendant and members of his family, friends and others in the courtroom.  While maybe not saying so precisely, this was the clear thrust of her statements.  These sentiments were expressed in the foreperson's notes to the court.  The task at hand was to ameliorate her fears so she could continue to deliberate or to decide to declare her unable to continue.  This task was undertaken in a reasonable fashion, in a closed courtroom without some of

16

those she feared hearing her every word.  The Court decided that this method of inquiry was the most useful, in obtaining the needed information to determine what to do about the juror's concerns.  In the final analysis, the Court handled Juror #11's situation as follows:  the Court interviewed the juror in a setting most conducive to getting responses to address the situation at hand; the Court ensured a record was made of the inquiry; the Court ensured that all counsel could hear the proceeding; the Court invited input from counsel <u>and</u> reserved making a ruling until counsel had the chance for input and the Court made a record of what had transpired.  Clearly, on this record, a new trial is unwarranted, as the principles behind the constitutional right to a public trial have not been abridged.

The second instance, requires little further record justification other than to point out that counsel asked to employ a similar process as that used in dealing with Juror #11, with the remaining element.  The Court notes, however, that reference to that process underscores counsel's belief in its efficaciousness and fairness.[3]

Finally, the three or so minutes of closure to ensure the jury was not distracted by other lawyers entering the courtroom on other matters hardly warrants a new trial especially where the subject matter of the proceedings was the uneventful giving of unobjected to instructions.

<u>Id.</u> at 15-16.

In the present case, the judge closed the courtroom to question Juror 11 after learning that she refused to vote and feared for her life.  <u>Id.</u> at 8.  The judge later questioned the remaining jurors after Juror 11 failed to appear for further deliberations for medical reasons.  <u>Id.</u> at 9.  The judge asked the remaining jurors if anything said by Juror 11 caused them concern or if they believed that they could not render a fair and impartial verdict based only on the evidence.  <u>See</u>

---

[3] The prosecutor had "requested that the jurors be interviewed by the Court as a group not in the courtroom and without the lawyers and parties present."  <u>Christian</u>, No. 08-22018-FC, at 9-10 (Dkt. 13-5).  Petitioner's trial counsel recommended speaking with each juror "individually, or at the least, . . . [the court] can talk to them and we can watch on television or video, or whatever that is, but I think it can be done individually."  <u>Id.</u> at 10.  The trial judge noted that there was no request "made for the Court to conduct its inquiry of the jurors in Defendant's presence in open court."  <u>Id.</u>

2/17/09 Trial Tr. at 20-21 (Dkt. 12-2).  None of the jurors raised their hands.  Id. at 20.  The judge informed the remaining jurors that they would have to begin their deliberations anew with an alternate juror.  Id.  Because it is clear from the judge's post-trial ruling that he believed that there were compelling reasons for the brief closures of the courtroom, and he most likely would have overruled any objection made by counsel to these closures, Petitioner has failed to show that counsel was ineffective for failing to object to the closure of the courtroom to interview Juror 11 or the remaining jurors.  See Johnson v. Sherry, 465 F. App'x 477, 481 (6th Cir. 2012) (affirming district court's denial of petition regarding the petitioner's ineffective assistance arising out of counsel's consenting to the closure of the courtroom given that the interest in closure so "was compelling, the judge would likely have overruled the objection, and the court of appeals would have likely affirmed").  Because Petitioner has failed to show that the judge would have been unable to articulate a valid reason to close the courtroom had counsel objected, he has failed to show that trial counsel was deficient for failing to object to the closure of the courtroom to question Juror 11 and the other jurors.

Moreover, assuming that trial counsel was deficient for failing to object to the closures of the courtroom, Petitioner has failed to show that he was prejudiced by counsel's failure to object. The Michigan Court of Appeals so held, see Christian, 2011 WL 4424347, at *10 (holding that Petitioner "failed to overcome the presumption that trial counsel's decisions pertaining to any exclusion of the public from the courtroom constituted sound trial strategy," and failed "to demonstrate prejudice"), and that decision is not inconsistent with any Supreme Court decision.

Petitioner argues that because the denial of the right to a public trial is a structural error, prejudice should be presumed.  See Pet. at 84.  Petitioner relies on Johnson v. Sherry, where the

Sixth Circuit considered whether trial counsel's performance led to a denial of the petitioner's right to a public trial. 586 F.3d at 447. The Sixth Circuit remanded the case to the district court for an evidentiary hearing to determine whether counsel's performance was deficient, and thus did not definitively resolve the prejudice issue. Id. at 448. The panel majority, however, seemed to suggest that if a structural error is shown by counsel's deficient performance, then prejudice should be presumed. Id. at 447 ("Because the right to a public trial is a structural guarantee, if the closure were unjustified or broader than necessary, prejudice would be presumed."). However, a later panel of the Sixth Circuit characterized the Johnson opinion's suggestion "that prejudice is presumed when the deficient performance results in a structural error" as dicta. Zimmerman v. Booker, 517 F. App'x 333, 337 n.3 (6th Cir. 2013). Therefore, Johnson does not control this Court's decision.

Further, Johnson's persuasive force has been undermined for the reasons set forth in Judge Kethledge's dissent in that case, which criticized the majority's assertion that prejudice should be presumed because the right to a public trial is a structural guarantee. Judge Kethledge observed that the majority's ruling "drives right past the distinction between a [public-trial] claim and a Strickland one. What the majority says is true enough for a [public-trial] claim, but Johnson's petition undisputedly turns on a Strickland one; and Strickland repeatedly and unequivocally says that actual prejudice is required." Id. at 449 (Kethledge, J., dissenting) (citing Strickland, 466 U.S. at 693-694).

Judge Kethledge's position has support in the Supreme Court's ineffective assistance of counsel and structural error jurisprudence. In every case in which the Supreme Court has set forth the circumstances in which prejudice from counsel's deficient performance may be

presumed, it has never held that an underlying structural error caused by counsel's performance

is a reason for presuming prejudice; instead, only complete, actual, or constructive denial of

counsel or a conflict of interest suffices.  See Wright v. Van Patten, 552 U.S. 120, 124–125

(2008) (holding that "[United States v.] Cronic[, 466 U.S. 648 (1984)], not Strickland, applies

when the likelihood that any lawyer, even a fully competent one, could provide effective

assistance is so small that a presumption of prejudice is appropriate without inquiry into the

actual conduct of the trial, and one circumstance warranting the presumption is the complete

denial of counsel" (ellipsis, quotation marks, and citation omitted)).[4]  Presuming prejudice based

---

[4]  See also Florida v. Nixon, 543 U.S. 175, 189–190 (2004) ("Cronic recognized a narrow
exception to Strickland's holding that a defendant who asserts ineffective assistance of counsel
must demonstrate not only that his attorney's performance was deficient, but also that the
deficiency prejudiced the defense[,]" and that because "counsel's failure must be complete" in
order "for Cronic's presumed prejudice standard to apply," the "surrounding circumstances [that]
will justify a presumption" are infrequent (brackets and quotation marks omitted)); Bell v. Cone,
535 U.S. 685, 695–696 (2002) (identifying the following three situations where a presumption of
prejudice is warranted: (i) "where the accused is denied the presence of counsel at a critical
stage," (ii) where "counsel entirely fails to subject the prosecution's case to a meaningful
adversarial testing", and (iii) "where counsel is called upon to render assistance under
circumstances where competent counsel very likely could not"); Mickens v. Taylor, 535 U.S.
162, 166 (2002) ("[The Court has] spared the defendant the need of showing probable effect
upon the outcome, and [has] simply presumed such effect, where assistance of counsel has been
denied entirely or during a critical stage of the proceeding. When that has occurred, the
likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. But
only in 'circumstances of that magnitude' do[es] [the Court] forgo individual inquiry into
whether counsel's inadequate performance undermined the reliability of the verdict." (citations
omitted)); Roe v. Flores–Ortega, 528 U.S. 470, 482–483 (2000) (requiring the defendant, in
cases involving mere attorney error, to demonstrate that such errors actually had an adverse
effect on the defense, but that a presumption of prejudice is warranted where the defendant
alleges that "during the judicial proceeding he was — either actually or constructively — denied
assistance of counsel altogether"); Smith v. Robbins, 528 U.S. 259, 286-287 (2000) (holding that
the "applicability of Strickland's actual-prejudice prong to [the defendant's] claim of ineffective
assistance follows from Penson[ v. Ohio, 488 U.S. 75 (1988)], where [the Court] distinguished
denial of counsel altogether on appeal, which warrants a presumption of prejudice, from mere
ineffective assistance of counsel on appeal, which does not"); Penson, 488 U.S. 75, 88
(extending the "denial of counsel" presumption to the appellate stage where a petitioner is left
"completely without representative during the appellate court's actual decisional process");

20

upon counsel's failure to object to a structural error would be inconsistent with this precedent, as well as with <u>Strickland</u>'s unequivocal holding that, denial of counsel and "[c]onflict of interest claims aside, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." <u>Strickland</u>, 466 U.S. at 693.

The Court further notes that there is a split in the circuits as to whether prejudice is presumed when the underlying error is structural.  Three circuits, including the Sixth Circuit panel majority in <u>Johnson</u>, have concluded that prejudice can be presumed where counsel's deficient performance results in a structural error.[5]  Two circuits have gone in the opposite direction, requiring a showing of actual prejudice even where the error is structural.[6]  And one circuit has declined to determine whether trial counsel's failure to object to the closure of the courtroom requires a showing of actual prejudice or whether prejudice can be presumed.  <u>See</u>

<u>Cronic</u>, 466 U.S. 658, 659–660 (stating that the that the "presumption that counsel's assistance is essential requires [the Court] to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial," and that, in some situations, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial"); <u>Strickland</u>, 466 U.S. at 692 (stating that the "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice").

[5] <u>See</u> <u>Johnson</u>, 586 F. 3d at 447 ("Because the right to a public trial is a structural guarantee, if the closure were unjustified or broader than necessary, prejudice would be presumed."); <u>Owens v. United States</u>, 483 F.3d 48, 64-65 (1st Cir. 2007) (prejudice presumed where counsel failed to object to the closure of the courtroom for an entire day of trial); <u>McGurk v. Stenberg</u>, 163 F.3d 470, 475 (8th Cir.1998) (holding that, "when counsel's deficient performance causes a structural error, we will presume prejudice under <u>Strickland</u>").

[6] <u>See</u> <u>Purvis v. Crosby</u>, 451 F.3d 734, 742 (11th Cir. 2006) (requiring a showing of actual prejudice where counsel failed to object to a courtroom closure); <u>Virgil v. Dretke</u>, 446 F.3d 598, 607 (5th Cir. 2006) (declining to hold that "a structural error alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context").

United States v. Withers, 638 F.3d 1055, 1067-1068 (9th Cir. 2011).  The Sixth Circuit has repeatedly recognized that a "disagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established" for federal habeas purposes.  See Miller v. Colson, 694 F.3d 691, 698 (6th Cir. 2012), cert. denied 133 S. Ct. 2739 (2013).

Furthermore, the Supreme Court's recent decision in Premo v. Moore, 131 S. Ct. 733 (2011) appears to vindicate Judge Kethledge's dissenting opinion in Johnson.  In Premo, the petitioner had pleaded no contest to felony murder.  He subsequently filed a habeas petition in which he alleged that counsel was ineffective for failing to move to suppress his coerced confession, which had been introduced in violation of Arizona v. Fulminante, 499 U.S. 279 (1991).  The Ninth Circuit granted habeas relief, holding that the state-court's decision that counsel's failure to move to suppress the statement was not ineffective was both an unreasonable application of Strickland and contrary to Fulminante.  See Premo, 131 S. Ct. at 738–739.

The Supreme Court reversed, concluding that the Ninth Circuit had erred by incorporating the standard governing the underlying substantive violation of a coerced confession set forth in Fulminate into the Strickland inquiry.  Id. at 743, 746.  Specifically, the Supreme Court found that the state court's finding that the petitioner was not prejudiced by his counsel's failure to seek suppression of the petitioner's confession could not "be contrary to Fulminante, for Fulminante says nothing about prejudice for Strickland purposes, nor does it contemplate prejudice in the plea bargain context."  Id. at 744.  Furthermore, after noting that Fulminante is not a "per se rule of prejudice, or something close to it, in all cases involving suppressible confessions," the Court held that the Fulminante's prejudice standard for suppressible confessions "cannot apply to determinations of whether inadequate assistance of

22

counsel prejudiced a defendant who entered into a plea agreement." Id. Thus, the question in Premo was essentially whether the state-court's decision that the petitioner was not prejudiced by counsel's performance was unreasonable. Id.[7] The Court then held the "state postconviction court reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions," thereby ending federal review under the AEDPA. Id. at 745.

Thus, the Supreme Court in Premo found error in the Ninth Circuit's incorporation of the Fulminante prejudice standard governing the underlying error into the Strickland prejudice inquiry. This is precisely what the Sixth Circuit did in Johnson; it presumed prejudice where counsel's performance resulted in a structural error. As such, Johnson cannot be reconciled with Premo. Therefore, in light of Premo, the question presented here is whether the state-court's decision that Petitioner was not prejudiced by his counsel's failure to object to the closure of the courtroom was an unreasonable application of clearly established federal law.

A habeas court may only look at the holdings of the United States Supreme Court "as they existed at the time of the relevant state court decision" to determine whether the decision was contrary to, or an unreasonable application of, clearly established federal law. Mitzel v. Tate, 267 F.3d 524, 530-531 (6th Cir. 2001). A habeas court cannot look to the decisions of this circuit, or other courts of appeal, when deciding whether a state-court's decision was contrary to, or an unreasonable application of, clearly established federal law. Id.; Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (explaining that circuit court precedent does not constitute "clearly established Federal law, as determined by the Supreme Court," and thus "cannot form the basis

---

[7] See Premo, 131 S. Ct. at 743 ("To prevail on prejudice before the state court [the petitioner] had to demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (internal quotation marks omitted)).

for habeas relief under [the] AEDPA" (citation omitted)); <u>Lopez v. Smith</u>, -- S. Ct. --, 2014 WL 4956764, at *3-4 (2014) (recognizing that the AEDPA prohibits federal courts of appeal from relying on their own precedent to conclude that a particular constitutional principle is clearly established).  Given the absence of any clearly established federal law from the Supreme Court that a court should presume prejudice when the underlying error is structural, this Court finds that the state court's decision that Petitioner was not prejudiced by his counsel's failure to object to the closure of the courtroom was not an unreasonable application of clearly established federal law.  Moreover, because the Sixth Circuit's holding in <u>Johnson</u> cannot be reconciled with <u>Premo</u>, this Court is not bound by <u>Johnson</u>, even if it were not dicta.

In the present case, Petitioner has failed to allege, let alone establish, that he was actually prejudiced by the closure of the courtroom for jury selection or during the subsequent questioning of the jurors.  Because Petitioner has failed to show that the result would have been different had trial counsel objected to the closures of the courtroom, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim, nor can he use it to establish cause to excuse any default for his public-trial claim. <u>Purvis,</u> 451 F. 3d at 743.

Finally, Petitioner has presented no new, reliable evidence to establish that he is actually innocent of these crimes.  Because Petitioner has failed to do so, a miscarriage of justice will not occur by the Court declining to review Petitioner's procedurally defaulted public-trial claim on the merits.  <u>See</u>, <u>e.g.</u>, <u>Wolfe v. Bock</u>, 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006) ("The petitioner has not presented any new reliable evidence to support a claim of actual innocence. Therefore, the Court must conclude that nearly all of the petitioner's claims of prosecutorial misconduct are barred by the doctrine of procedural default.").

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on his first claim, or the portion of his sixth claim alleging ineffective assistance of counsel for failing to object to the closure of the courtroom.

### 2.   Claims 2 and 6:  The Right to be Present Claim and the Related Ineffective Assistance of Counsel Claim

In his second claim, Petitioner contends that his right to be present at all critical stages of the criminal proceedings was violated when he was absent from the courtroom when the judge questioned Juror 11, and subsequently questioned and instructed the remaining jurors.  See Pet. at 27-37.  As part of his sixth claim, Petitioner argues that trial counsel was ineffective for failing to object to his absence from the hearings.  See id. at 3, 78-84.

A defendant has a constitutional right to "be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."  Kentucky v. Stincer, 482 U.S. 730, 745 (1987).  This right, however, "is not absolute, but exists only when his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."  United States v. Henderson, 626 F.3d 326, 343 (6th Cir. 2010) (quotation marks omitted)).  "In other words, the defendant's presence is not guaranteed when it would be useless, but only to the extent that a fair and just hearing would be thwarted by his absence."  Id. (quotation marks omitted).  Indeed, the U.S. Constitution "does not require the defendant to be present when his 'presence would be useless, or the benefit but a shadow.'"  Cathron v. Jones, 190 F. Supp. 2d 990, 1001 (E.D. Mich. 2002) (quoting Snyder v. Massachusetts, 291 U.S. 97, 106-107 (1934), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1 (1964)).  A defendant's presence at a hearing is "largely a matter of form when a defendant's lawyer is present at proceedings that raise largely legal issues."  Id. at 1001-1002.

25

Petitioner has failed to show that he was absent from any stages of the prosecution where his presence was necessary for him to defend against the charges. Petitioner's first absence involved the judge ascertaining the basis for Juror 11's fear of reaching a verdict in this case. The second absence involved the judge questioning the remaining jurors for the limited purpose of determining whether anything had transpired that would affect their ability to be fair and impartial. The judge also responded to a juror's inquiry concerning what they should do with the notes that they had taken during the deliberations, and he instructed the remaining jurors that they would have to begin their deliberations anew with an alternate juror.

Petitioner has failed to show that he was prejudiced by his absence during the brief questioning of Juror 11 to ascertain the basis of her fears, and the judge's subsequent questioning of the remaining jurors to determine whether they could remain fair and impartial. The judge permitted Petitioner's counsel to watch the questioning of the jurors via a television monitor from the judge's chambers. Moreover, a record of the proceedings was made. Under these circumstances, Petitioner has failed to show that he was prejudiced by his absence from the hearing. See United States v. Florea, 541 F.2d 568, 572-573 (6th Cir. 1976) (defendants were not prejudiced by their absence when the district judge excused one juror, substituted an alternate, and sequestered the jury, where the judge carefully prepared a record of the proceedings, including the testimony of the juror and the court's reasons for excusing him).

Finally, the judge instructed the remaining jurors that they were to begin their deliberations anew with an alternate juror and would have to take the notes down, although they could put them up again as they continued with their new deliberations. A judge's instructions to a jury concerning when they should commence deliberations is not considered a critical stage of

the trial for which a defendant's presence is required, so long as defense counsel is present.  See Henderson, 626 F.3d at 342-343 (holding that "defense counsel was present for all communications with the jury and expressly waived [the petitioner's] right to be present during what was a purely technical procedure that had no bearing on [the petitioner's] substantive rights").

In this case, the hearings where Petitioner was not present in the courtroom were not critical stages of trial proceedings; therefore, counsel was not ineffective for either waiving Petitioner's presence or not objecting to his absence.  See United States v. Osterbrock, 891 F.2d 1216, 1219-1220 (6th Cir. 1989) (finding that the petitioner failed to prove that his counsel was deficient for failing to object to the reading of a witness's testimony to the jury by the court reporter in his and his counsel's absence, or that the failure to object was prejudicial)

Accordingly, the Court finds that Petitioner is not entitled to relief on his second claim, or the related portion of his sixth claim alleging ineffective assistance of counsel.

### 3.  Claim 3:  The Flight Instruction Claim

Petitioner next claims that the judge erred in giving the jurors an instruction on flight.  See Pet. at 38-51.[8]  The trial judge gave the following instruction, which was based on Michigan Model Criminal Jury Instruction 4.4:

> There has been some evidence that the defendants Kino Christian and Cquan Hinton tried to run away from the scene of the crime. This evidence does not produce [sic] guilt, does not prove guilt.  A person may run or hide for innocent reasons, such as panic, mistake, or fear.

---

[8] Monica McGee, Petitioner's friend, testified at trial that she had called Petitioner the night of the shooting after hearing police sirens, and that Petitioner told her to come and pick him up, which she did.  1/30/2009 Trial Tr. at 138-140 (Dkt. 10-4).  The prosecutor argued that this constituted flight.  See 2/9/2009 Trial Tr. at 29-31, 57, 60 (11-4); 2/10/2009 Trial Tr. at 69, 72 (Dkt. 11-5).

> However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and if true, whether it shows that the defendant had a guilty state of mind.

2/10/09 Trial Tr. at 80-81 (Dkt. 11-5).[9]

An erroneous jury instruction warrants habeas corpus relief only where the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991). Thus, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional] right." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Further, a jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quotation marks omitted); see also Johnson v. Smith, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002) (same).

The Supreme Court has long held that evidence of flight after committing a crime, while not sufficient in and of itself to sustain a conviction, is relevant to establish a defendant's consciousness of guilt. See, e.g., Allen v. United States, 164 U.S. 492, 499 (1896) ("Indeed, the law is entirely well settled that the flight of the accused is competent evidence against him as having a tendency to establish his guilt."); Alberty v. United States, 162 U.S. 499, 510–511 (1896) ("[U]ndoubtedly, the flight of the accused is a circumstance proper to be laid before the jury, as having a tendency to prove his guilt[.]"); cf. Illinois v. Wardlow, 528 U.S. 119, 124–125 (2000) (suspect's unprovoked flight from police was relevant to issue of reasonable suspicion,

---

[9] The jury instruction reads: "There has been some evidence that the defendant [tried to run away / tried to hide / ran away / hid] after [the alleged crime / (he / she) was accused of the crime / the police arrested (him / her) / the police tried to arrest (him / her)]. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind." Mich. Crim. J.I. 2d 4.4 (1)-(3).

because "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. Johnson v. Burke, 903 F.2d 1056, 1062 (6th Cir. 1990), overruled on other ground by Couch v. Jabe, 951 F.2d 94, 96 (1991); People v Unger, 749 N.W.2d 272, 287 (Mich. Ct. App. 2008) ("Evidence of flight is admissible to support an inference of consciousness of guilt and the term flight includes such actions as fleeing the scene of the crime." (brackets and quotation marks omitted)). The giving of a flight instruction did not violate Petitioner's due process rights or render the trial "fundamentally unfair," particularly in light of the fact that the flight instruction "directed jurors to make their own determinations as to whether [Petitioner] did, in fact, attempt to flee and, if so, what state of mind such flight evinced." Burton v. Renico, 391 F.3d 764, 778 (6th Cir. 2004); see also United States v. Carter, 236 F.3d 777, 792 n. 11 (6th Cir. 2001) (holding that the district court did not abuse its discretion in giving a flight instruction, though defendant may have had a reason to flee from officers other than guilt of the criminal charge, where the instruction stated that "evidence of flight may or may not indicate a defendant's guilty conscience or intent to avoid punishment" (emphasis omitted)).

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on his third claim.

### 4.  Claim 4.  The Right to Present a Defense Claim

Petitioner next contends that the trial judge violated his right to present a defense when he refused to permit Petitioner to play for the jury the tape-recorded conversations that Moore had with Petitioner in the jail while Moore was wearing a wire.  See Pet. at 52-62.   The judge

29

denied defense counsel's request to play the tape recording because it was over three hours long, much of the tape was inaudible, much of the conversations involved "peripheral" issues, and Petitioner's own attorney admitted that nothing on the tapes implicated Petitioner in the crime. The judge did admit the tape into evidence, and permitted defense counsel to suggest to the jurors that they listen to the tape recording during their deliberations.  2/4/09 Trial Tr. at 117-128 (Dkt. 11-1).

The Michigan Court of Appeals rejected Petitioner's same claim on the ground that Michigan Rule of Evidence 611(a) permits a trial judge to exercise reasonable control over the mode and order of presenting evidence to avoid the needless consumption of time.  The Michigan Court of Appeals further concluded that it was not unreasonable for the trial judge to admit the recorded conversations, but leave it to Petitioner's attorney to argue to the jurors that they should listen to the recordings during their deliberations.  See Christian, 2011 WL 4424347, at *11-12.  This Court agrees.

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law."  Washington v. Texas, 388 U.S. 14, 19 (1967); see also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (Quotation marks and citations omitted)).  However, an accused in a criminal case "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules

30

of evidence." Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (brackets omitted). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." Crane, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. Id. Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "arbitrary or disproportionate to the purposes they are designed to serve." United States v. Scheffer, 523 U.S. 303, 308 (1998) (quotation marks omitted).

Moreover, under the standard of review for habeas cases as enunciated in section 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial-court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision was "an objectively unreasonable application of clearly established Supreme Court precedent." See Rockwell v. Yukins, 341 F.3d 507, 511-512 (6th Cir. 2003).

The trial judge did not deny Petitioner his right to present a defense by refusing to allow him to play the entire tape-recorded conversations between himself and Moore to the jury, in light of the fact that the tape recordings were several hours long, contained many inaudible parts, involved discussions on tangential matters, and contained no exculpatory material. See United States v. Williams, 720 F.3d 674, 692-693 (8th Cir. 2013), cert. denied 134 S. Ct. 1337 (2014) (district court did not abuse its discretion by refusing to allow pro se defendant to play all 170 hours of government's audio recordings during drug-conspiracy trial; defendant was given access to and presumably listened to all 170 hours of taped conversations, but defendant did not

point to a single recorded comment or conversation that was not included in excerpts submitted

by government and that supported his defense). Indeed, Petitioner has not identified which

portion of these lengthy recordings he believes would have impacted his case. Moreover,

because the tape recorded conversations were admitted into evidence and counsel was permitted

to urge the jurors to listen to these tapes during their deliberations, Petitioner was not precluded

from presenting these tape recordings as part of his defense.

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on his fourth

claim.

### 5.  Claims 5 and 6.  The Prosecutorial Misconduct Claim and the Related Ineffective Assistance of Counsel Claim

Lastly, Petitioner claims that the prosecutor committed misconduct by eliciting testimony

from two prosecution witnesses, Marcus Turner and Tobias Gatewood.  This testimony

concerned prior inconsistent statements that they had made to the police, in which they

implicated Petitioner. Petitioner claims that the prosecutor then wrongfully used these prior

inconsistent statements as substantive evidence.  See Pet. at 63-76.  As part of his sixth claim,

Petitioner contends that his trial counsel was ineffective for failing to object to this misconduct.

See id. at 84-88.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004).  A prosecutor's improper comments will

be held to violate a criminal defendant's constitutional rights only if they "so infected the trial

with unfairness as to make the resulting conviction a denial of due process."  Darden v.

Wainwright, 477 U.S. 168, 181 (1986).  Thus, prosecutorial misconduct will form the basis for

habeas relief only if the conduct was so egregious as to render the entire trial fundamentally

32

unfair based on the totality of the circumstances.  Donnelly, 416 U.S. at 643-645; Angel v. Overberg, 682 F.2d 605, 608 (6th Cir. 1982) (determining whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case").  The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997).  Therefore, in order to obtain habeas relief on a prosecutorial-misconduct claim, a habeas petitioner must show that the state-court's rejection of his prosecutorial-misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012).  This is particularly so, "because the Darden standard is a very general one, leaving courts more leeway in reaching outcomes in case-by-case determinations[.]"  Id. (ellipsis and quotation marks omitted).

The Michigan Court of Appeals rejected Petitioner's claim, finding that there was no basis for concluding that the prosecutor acted in bad faith by introducing the two witnesses' prior statements.  See Christian, 2011 WL 4424347, at *6.  The Michigan Court of Appeals further ruled that Turner's and Gatewood's prior inconsistent statements were properly admitted under Michigan law for impeachment purposes, and also had some relevancy with respect to the adequacy of Sergeant Gaspar's investigation of the case, which Petitioner and his co-Defendants had attacked as insufficient.  Id. at *6-7.  Finally, the court held that any prejudice was tempered by the judge's instruction that the jury could only consider the prior inconsistent statements as impeachment evidence, not as substantive evidence.  Id. at *8.

Although Petitioner has framed his claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this

evidence." Webb v. Mitchell, 586 F.3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." Cristini v. McKee, 526 F.3d 888, 900 (6th Cir. 2008). Furthermore, it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle, 502 U.S. at 67-68. Rather, a federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. Id. "Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not to be questioned" by a federal habeas court. Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (brackets omitted). Petitioner's claim that the prosecutor improperly impeached Turner or Gatewood with their prior inconsistent statements is, therefore, not cognizable in a federal habeas corpus proceeding. See, e.g., Roland v. Mintzes, 554 F. Supp. 881, 890 (E.D. Mich. 1983). Therefore, the Court finds that the prosecutor's questions did not deprive Petitioner of a fundamentally fair trial.

Furthermore, to show prejudice under Strickland for failing to objection to prosecutorial misconduct, a habeas petitioner must demonstrate that, but for the alleged error of his trial counsel in failing to objection to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. Hinkle, 271 F.3d at 245. Because the Court determines that the prosecutor's questions did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these questions. See Slagle v. Bagley, 457 F.3d 501, 528 (6th Cir. 2006).

Accordingly, the Court finds that Petitioner is not entitled to habeas relief on his fifth claim, or the related portion of his sixth claim alleging the ineffective assistance of counsel.

**B.  Certificate of Appealability**

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability is not warranted in this case.

**C.  Leave to Proceed In Forma Pauperis**

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis ("IFP") is a lower standard than the standard for certificates of appealability.  Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D.

35

Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed IFP on appeal. Id. at 764-765.

## V.  CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus. The Court also denies Petitioner's motions for the appointment of counsel (Dkt. 18) and for an evidentiary hearing (Dkt. 19) as moot. The Court declines to issue a certificate of appealability. However, the Court grants Petitioner leave to appeal in forma pauperis.

SO ORDERED.


Dated: November 12, 2014
         Detroit, Michigan

s/Mark A. Goldsmith_____
MARK A. GOLDSMITH
UNITED STATES DISTRICT JUDGE


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 12, 2014.

s/Johnetta M. Curry-Williams_____
CASE MANAGER